**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| PDL BioPharma, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Eli Lilly and Company, <br><br> Defendant. | Civil Action No. 1:23-cv-02289-RLY-MKK |

**JOINT REPORT ON THE STATUS OF DISCOVERY**

On October 11, 2024, the Court held a discovery conference. Dkt. 92. The Court set a telephonic status conference for November 12, 2024, and ordered the parties to submit this Joint Report on the Status of Discovery. *Id.* Plaintiff PDL BioPharma, Inc. ("PDL") and Defendant Eli Lilly and Company ("Lilly") respond as follows:

## I.    A detailed description of all discovery completed to date

The parties served their initial disclosures on August 6, 2024. PDL has propounded two sets of Requests for Production (Nos. 1-43 and 44-49), and Lilly has responded to PDL's first set of Requests for Production (Nos. 1-43). PDL has also propounded three sets of Interrogatories (Nos. 1-5, 6-8, and 9-14), and Lilly has responded to PDL's first and second sets of Interrogatories (Nos. 1-5 and 6-8). Lilly has propounded two sets of Requests for Production (Nos. 1-41 and 42-68), and PDL has responded to both sets. Lilly has also propounded three sets of Interrogatories (Nos. 1-4, 5-6, and 7), and PDL has responded to Lilly's first and second sets of Interrogatories (Nos. 1-4 and 5-6). Following the parties' meet and confer process, PDL has provided first supplemental responses to Interrogatory Nos. 2-4. As explained in Section III, the parties disagree on whether PDL "controls" documents in the possession of AbbVie, Inc. ("AbbVie"). PDL has issued a third-party subpoena to AbbVie. AbbVie has objected to PDL's subpoena. [**Lilly's Position**: PDL has a legal and contractual right to request relevant documents from AbbVie and thus the documents are in PDL's possession, custody, and control. The subpoena does not discharge or obviate PDLs' obligation to produce these documents. Nevertheless, Lilly has also issued a third-party subpoena to AbbVie out of an abundance of caution.][1] [**PDL's Position**: as

---

[1] Attorneys from Taft Stettinius & Hollister LLP are responsible for handling the third-party subpoenas to AbbVie on behalf of Lilly.

explained in Lilly Dispute #1 (Section III), PDL has no legal or contractual right to documents in AbbVie's possession and thus no control over those documents.]

The parties have agreed to rolling document productions. PDL has produced four volumes of documents, amounting to 413 documents (29,064 pages). Documents produced include the Queen patents and prosecution histories, PDL's agreements with Lilly, reports for each antibody humanized by PDL for Lilly, publications authored by the inventors of the Queen patents, laboratory notebooks for PDL scientists, third-party humanization agreements, and agreements relating to PDL's spin-off of Facet Biotech. On October 11, 2024, the parties reached agreement on the search terms Lilly would use to search its ESI. Lilly has produced one volume of documents, amounting to 233 documents (1,462 pages). Documents produced include Lilly's internal research and development files relating to the development of donanemab—including the humanization thereof—and presentations, meeting minutes, other written materials, and email correspondence related to these efforts.

## II.    A detailed description of all discovery presently scheduled or pending, including the due dates for any pending discovery requests and the scheduled dates for any depositions, and the identity of the counsel responsible for completing such discovery

AbbVie's response to PDL's third-party subpoena is due on November 21, 2024. PDL's response to Lilly's third set of Interrogatories (No. 7) is also due on November 21, 2024. Lilly's responses to PDL's second set of Requests for Production (Nos. 44-49) and third set of Interrogatories (Nos. 9-14) are due on November 25, 2024.

The parties have agreed to rolling productions and to substantially complete document production by December 27, 2024. Dkt. 39-1 at ¶ 7. PDL expects make a significant rolling production by November 15, which will be PDL's fifth production volume. PDL is currently in the process of reviewing responsive ESI from the custodial files of Christopher Stone (PDL's CEO

and General Counsel), as well as responsive documents contained in its hardcopy files, to include in this November 15 production. PDL has also contacted its prior counsel to investigate whether they are in possession of additional litigation files. PDL is in the process of determining the scope and nature of documents maintained by Weil, Gotshal & Manges LLP, counsel to PDL in litigations with Alexion Pharmaceuticals, Inc. and MedImmune, LLC over ten years ago. Lilly is continuing to review ESI that hits on the parties' agreed-upon search terms and parameters, including five custodians (Dr. Ronald DeMattos, Christopher LeMasters, Michael A. Johnson, Dr. Jirong Lu, and Dr. Ying Tang). Lilly has made, and will continue to make, rolling productions as it identifies responsive documents. Lilly anticipates making a substantial production on or before November 20, which is anticipated to include hundreds of documents.

The Court has ordered that non-expert witness discovery and discovery relating to liability issues be completed by January 27, 2025, and that all remaining discovery (i.e., expert witness discovery and discovery relating to damages) be completed by June 27, 2025. Dkt. 62 at § IV(C).

Attorneys from Orrick, Herrington & Sutcliffe LLP and Kirkland & Ellis LLP are responsible for responding to pending discovery requests and for scheduling depositions on behalf of PDL and Lilly, respectively.

## III.    A detailed description of any discovery disputes presently pending, including the status of the resolution of the dispute and the identity of the counsel responsible for resolving the dispute

The parties continue to negotiate the scope of certain discovery requests, specifically:

### PDL's Disputes

1.  Lilly's prompt production of documents and information related to Lilly's humanization of donanemab (PDL RFP Nos. 1, 4, and 5 and ROG No. 4);

2.  Lab notebooks and technical documents regarding development of donanemab;

3.  Lilly's custodians; and

4

    4.  Lilly's factually deficient contentions (PDL ROG Nos. 6-7).

**Lilly's Disputes**

    1.  PDL's refusal to collect and produce responsive documents from AbbVie;

    2.  Documents relating to the scope of PDL Technical Information (Lilly RFP Nos. 7 and 20-21); and

    3.  Documents relating to PDL's understanding of key contractual provisions (Lilly RFP Nos. 25, 27-28).

**PDL's Disputes**

**1.    PDL Dispute #1: Prompt Production of Documents and Information Related to Lilly's Humanization of Donanemab (PDL RFP Nos. 1, 4, and 5 and ROG No. 4)**

    **PDL's Position.** Lilly has agreed to produce "documents related to Lilly's humanization of donanemab," including "any documents or any information that they used to humanize the antibody for the new drug" (Dkt. 98 at 15:2-5), and certain documents relating to the PDL Humanized Antibodies (Lilly's Position Statement on Disputed Requests for the October 11, 2024 Discovery Conference at 4-5). PDL has previously explained that a broader scope of documents and information relating to the development of donanemab and testing of the PDL-Humanized Antibodies is relevant to whether donanemab incorporates PDL Technical Information. For example, PDL Technical Information encompasses "technical information [that] is necessary for the research, ***development***, registration, manufacture, use or sale of the Humanized Antibody." Dkt. 53 at § 1.20 (emphasis added). Documents relating to the development of donanemab may thus reflect the use of PDL Technical Information. Moreover, Lilly has placed the development of donanemab in dispute by asserting that it "***developed*** and humanized [donanemab] all on its own." Dkt. 36 at 1 (emphasis added). PDL is entitled to discovery to test Lilly's assertion. Consistent with the Court's guidance, PDL has agreed to wait until Lilly has completed its production of

documents relating to the humanization of donanemab before seeking additional categories of discovery responsive to these requests. But Lilly has refused to provide any information regarding the volume and timing for its production of such documents beyond stating that they will make rolling productions through the substantial completion deadline. PDL cannot wait until the substantial completion deadline on December 27 to assess whether additional discovery is needed. Fact discovery on liability closes just one month later. PDL thus requests that the Court order Lilly to complete its production of documents relating to the humanization of donanemab on or before November 22, 2024.

**Lilly Position.** As PDL admits, Lilly has already agreed to produce documents related to the humanization of donanemab. PDL argues here, as it did at the last status conference, that it is also entitled to documents related to the "development of donanemab and testing of the PDL-Humanized Antibodies." Lilly disagrees. At the last status conference, PDL narrowed its request to "documents relating to the design of donanemab." Tr. 19:24-25. The Court also observed that the dispute had been narrowed to "the gap between ***design*** the drug and ***humanize*** the antibody for the drug." Tr. 20:1-8. Thus, the only remaining dispute, as the Court noted in October, is whether Lilly should be required to produce documents related to the "design" of donanemab, even where such documents do not relate to humanization. *Id.*

As PDL notes, the parties agreed to table this question pending Lilly's production of documents relating to the humanization of donanemab. But PDL now wants Lilly to complete its production of humanization documents by November 22. PDL's demand is effectively an attempt to unilaterally shift the substantial completion deadline for Lilly only. And it is unnecessary in any event. Lilly has already produced documents related to the humanization of donanemab and expects to make another substantial production by November 20. After that, Lilly will work to

complete its production as quickly as possible. PDL thus already has, and will soon have more, documents from which it can evaluate whether it believes it necessary to pursue its request for documents more broadly relating to donanemab's design. In short, PDL has no basis to insist that Lilly complete its production over a month before PDL.

2.    **PDL Dispute #2: Lab Notebooks and Technical Documents Regarding Development of Donanemab**

**PDL's Position.** Based on its review of Lilly's internal research and development summary files relating to the development of donanemab, PDL has identified lab notebooks and other technical documents[2] that are highly likely—in fact, certain—to contain relevant information regarding the development and humanization of donanemab. These lab notebooks and documents are specifically referenced in Lilly's internal research and development summary files for donanemab. Lilly has refused to agree to produce the requested files and, instead, has taken the position that it needs more time to consider PDL's request and that it will produce these documents only if they are relevant and proportional to the needs of the case. There can be no doubt that these documents are relevant. Not only were they referenced in Lilly's internal research and development summary files for donanemab, but they were referenced in the context of donanemab's humanization. Indeed, these lab notebooks plainly fall within Lilly's agreement to produce "documents related to Lilly's humanization of donanemab." Moreover, these documents

---

[2] AME notebook #1314 (Katharine Tower); Aβ Antibody de novo 2006 (data binder, Ying Tang); AME notebook #2318 (Ying Tang); AME notebook #2383 (Gregory Beuerlein); Lilly notebook A04558 (Jirong Lu); Lilly notebook A07773 (Yu Tian); Lilly notebook A10246 (Chi-kin Chow); Lilly notebook A10757 (Chi-kin Chow); Lilly notebook A14115 (Ying Tang); Lilly notebook Z03067 (Peter McDonnell); Lilly notebook Z03187 (Gregory Beuerlein); Lilly notebook Z03162 (Dennis Gately); notebook Z03737 (Peter McDonnell); Lilly notebook 18045; notebook #2327 (Gregory Beuerlein); notebook #1721 (Dongmei He); notebook #1965 (Dennis Gately); and notebook Z02735, as well as Report MSR037; N2pG_hE8L_VL_35_51.pdf; NB A13559; and N3pG_R17_HC_LC.pdf.

are entirely proportional to the needs of the case. PDL seeks eighteen lab notebooks, identified by number and, where available, author, and four additional technical documents, identified by file name. Lilly's assertion that additional time is necessary to assess this request is also unavailing. PDL requested that Lilly produce these documents on October 23 to allow Lilly ample time to investigate in advance of this conference. Accordingly, PDL requests that the Court order Lilly to produce the lab notebooks and other technical documents identified in footnote 2.

**Lilly Position.** Contrary to PDL's position statement, Lilly has not refused to produce these notebooks. This is an issue PDL raised for the first time in late October. Lilly told PDL that it needed time to investigate PDL's request. PDL is asking for 18 lab notebooks from work conducted 15-20 years ago. Lilly must confirm whether the notebooks even exist anymore and, if so, use a vendor to collect them from storage before it can even assess whether they are relevant. Lilly started this process when PDL first made the request, and it remains ongoing. If Lilly is able to locate and retrieve the notebooks and they are relevant, Lilly will produce them—just as it has committed to PDL. There is no genuine dispute here and PDL's attempt to manufacture one is premature.

### 3.     PDL Dispute #3: Lilly Custodians

**PDL Position.** Based on its review of Lilly's internal research and development files relating to the development of donanemab, PDL has also identified two additional custodians: Peter McDonnell and Gregory Beuerlein. Peter McDonnell was responsible for the structural modeling of donanemab, through which Lilly used PDL Technical Information to determine that there was a steric clash and, as a result, make mutation Y36L. Gregory Beuerlein performed the humanization wet lab work for donanemab. In other words, Mr. Beuerlein performed many of the experiments during the humanization process for donanemab that may reflect the use of PDL Technical Information. The lab notebooks for both Mr. McDonnell and Mr. Beuerlein are cited in

summary documents relating to donanemab's humanization, and both are named as an author of various presentations and reports regarding donanemab's humanization. Both of these individuals are thus highly likely to have non-duplicative and responsive information. Despite this, Lilly has refused to confirm that it will produce documents from these custodians asserting instead that it needs more time to assess this request. Again, Lilly's assertion is unavailing. PDL identified these custodians more than two weeks ago to allow Lilly ample time to investigate in advance of this conference. Indeed, Lilly now agrees to tell PDL early next week—but presumably not before the conference—whether it will add these individuals as custodians. If Lilly refuses, PDL will have to wait another month to raise this dispute. PDL simply seeks to efficiently present this dispute to the Court, rather than delaying the dispute to less than one month before the substantial completion deadline. Accordingly, PDL respectfully requests that the Court order Lilly to run the parties' agreed-upon search terms across these custodians' ESI.

**Lilly Position.** There is no dispute ripe for the Court's resolution. As PDL notes, Lilly is in the process of assessing whether adding these additional custodians would be proportional to the needs of the case, comparing the proposed discovery's burden against its likely benefit and other relevant factors.

Lilly is conducting that analysis now, but doing so takes time. PDL first asked for additional custodians on October 23. PDL's requests go back two and a half decades and require Lilly to work with a vendor to access the relevant emails and transfer them to a review database. Lilly is collecting the documents, running the parties' agreed search terms to identify the burden of adding the custodians, and conducting a preliminary review to determine whether the custodians are likely to have relevant information. Lilly expects to be able to tell PDL early next week whether it intends to add the custodians.

9

4.    **PDL Dispute #4: Lilly's Factually Deficient Contentions (PDL ROG Nos. 6 and 7)**

**PDL's Position.** These interrogatories seek Lilly's "full factual basis" for its contentions that "Donanemab is not a Licensed Product" and that "Donanemab does not incorporate PDL Technical Information." In response, Lilly provides only threadbare assertions without any explanation or evidence. *See* Ex. 1 at 2-4. These responses are insufficient to provide any basis— let alone a good faith basis—for Lilly to oppose PDL's claims in this case. For example, Lilly's responses fail to address whether and, if so, to what extent Lilly disagrees with the various contentions in PDL's response to reciprocal interrogatories.[3] *See* Ex. 2 at 9-23 (PDL's contentions). Lilly has refused to meet and confer on these interrogatories or to agree to supplement its responses to these interrogatories. Instead, Lilly has demanded that PDL wait until Lilly replies to PDL's request for supplementation in letter correspondence before declaring an impasse. But the question that PDL asks is simple: will Lilly supplement its responses? It should not take days or weeks for Lilly to decide whether it will do so, and the Court should not allow Lilly to delay resolution of this dispute for another month. Accordingly, PDL respectfully requests that the Court

---

[3] Specifically, Lilly fails to address (1) whether it denies PDL's factual assertions about the degree of sequence homology and identity between donanemab and the antibodies humanized by PDL for Lilly, (2) its basis for asserting that the humanization reports and/or Queen Patents were not provided by PDL to Lilly under the Agreement, (3) its basis for asserting that all or some of the information in the humanization reports and/or Queen Patents are not PDL Technical Information, (4) whether it denies that publications by PDL scientists, such as Queen, C., et al. (1989) Proc. Natl. Acad. Sci. USA 86:10029 and Queen et al. (1991) Proc. Natl. Acad. Sci. USA 88:2869, are PDL Technical Information, (5) its basis for asserting that the PDL Technical Information identified by PDL was disclosed by third parties prior to PDL's invention, (6) its basis for asserting that the frameworks are publicly available and that other antibodies utilize human germline frameworks from the same gene family, (7) whether it denies that Lilly selected human frameworks for donanemab using the same method described in PDL's humanization reports and the Queen Patents, (8) whether it denies that the Y36L mutation was introduced during donanemab development using the same method described in PDL's humanization reports and Queen Patents, and (9) whether it denies that donanemab practiced certain claims of the Queen Patents.

order Lilly to supplement its responses to these interrogatories with the information requested in footnote 3 by November 22, 2024.

**Lilly Position.** This "dispute" is also premature. Lilly hasn't "refused to meet and confer" on Interrogatories 6 and 7 or "refused ... to supplement its responses," as PDL now claims. PDL sent a six-page, single-spaced letter detailing alleged deficiencies on November 1. As has been the parties' practice throughout these discussions, Lilly is considering PDL's correspondence and will respond in writing. Lilly has committed to providing a response to PDL's letter next week and indicated that it will then be available to meet and confer shortly thereafter. Then, if any dispute remains, PDL can raise it with the Court in a subsequent status conference. Doing so now, before the parties are at impasse, is not an efficient use of the Court's or parties' time. Lilly will—as it has throughout this case—work to diligently respond to PDL's letter and confer with PDL if any dispute even exists.

1.    **Lilly Dispute #1: PDL's refusal to collect and produce responsive documents from AbbVie**

**Lilly's Position.** PDL contends that, because of the 2008 spinoff of its biotechnology business, AbbVie—and not PDL—possesses core documents responsive to Lilly's requests. PDL has refused to collect documents from AbbVie, claiming they are outside PDL's control. That is wrong, for two reasons.

*First*, the spin-off agreement gives PDL the express legal right to request—and receive—documents related to its business. Indeed, the agreement states that "each Party **shall provide** the other Party ... reasonable access ... **to all records ... and Information** relating to the pre-Distribution operations." Ex. 3 at 476-477. This is not, contrary to PDL's representations, limited to information necessary to prepare pre-spinoff financials. Rather, it covers any information "reasonably required ... for the conduct of the ... PDL Business." *Id.* AbbVie, in turn, is required

to "us[e] reasonable best efforts to give access to" the requested information. *Id.* This contractual right puts these documents in PDL's control: "control" "is certainly broad enough to **encompass a contractual right** to obtain documents." *Williams v. Angie's List, Inc.*, 2017 WL 1318419, at *2-3 (S.D. Ind. Apr. 10, 2017).

*Second*, PDL has **already** requested and received documents from AbbVie. Even before filing this lawsuit, PDL asked for—and received—documents from AbbVie related to PDL's humanization business. Ex. 5 at 067. PDL then told AbbVie about this litigation and warned that "it is possible that documents in AbbVie's possession ... may be sought by the parties." Ex. 6 at 280. Here, as in *Williams*, PDL's contractual right to get documents from AbbVie, coupled with its demonstrated ability to do so, is the "most compelling" evidence that the documents are in PDL's control. *Williams*, 2017 WL 1318419, at *2-3 ("despite dragging its feet and protesting vociferously, [defendant was] actually able to retrieve and produce" data).

PDL has a right to these documents. It obtained them when it was in PDL's interest (and PDL presents no evidence to the contrary) yet is refusing to do so in response to Lilly's requests.

**PDL's Position.** In the Seventh Circuit, information is within a party's "control" if that party has a "legal right" to that information. *Gibson v. Joseph*, 2024 WL 2320002, at *2 (S.D. Ind. May 22, 2024) (quoting *Robinson v. Moskus*, 491 F. Supp. 3d 359, 364 (C.D. Ill. 2020)). If PDL had a legal right to secure documents from AbbVie, it would do so. But it does not. Nor does AbbVie appear to believe that PDL has any such right. While AbbVie voluntarily provided a small number of documents to PDL before this action was filed, AbbVie has declined to provide any additional documents. As a result, to obtain additional documents from AbbVie, PDL has served a subpoena upon AbbVie. Lilly has also served a subpoena. Assuming AbbVie complies with theses subpoenas, both parties will have the documents that they desire.

PDL's separation agreement with Facet (now AbbVie) grants PDL "reasonable access . . . to all . . . Information relating to pre-Distribution operations of the PDL Business[4] . . . or within [Facet's] possession or control or such other Information reasonably necessary for the preparation, review or auditing for spin-out financials." Ex. 3 at § 8.2. PDL's right to information is thus limited to that "reasonably necessary for the preparation, review or auditing for spin-out financials." *Id.* Lilly reads this provision to entitle PDL access to all pre-spinoff records "within [AbbVie's] possession or control." PDL does not read it that way, nor apparently does AbbVie. Indeed, any such interpretation would render the catch-all "other Information" superfluous. It should come as no surprise the separation agreement does not allow PDL to access all pre-spinoff information with no limitations and in perpetuity. In fact, Lilly's interpretation is contradicted by the Transition Services Agreements, which obligated Facet to provide PDL with "documents . . . to reasonably assist PDL with investigations, defense or prosecution of claims related to the PDL Business" *until December 18, 2011*. Ex. 4 at Schedule B.

**2.    Lilly Dispute #2: Documents relating to the scope of PDL Technical Information (Lilly RFP Nos. 7 and 20-21)**

**Lilly's Position.** As the Court has recognized, documents related to PDL's understanding of the scope of the Queen Patents, and PDL's "humanization process" in comparison to what others were doing in the field, are undoubtedly relevant. Tr. at 28:21-29:9; *see also* Tr. 22:17-19 ("how PDL defines or considers what its humanization process is" is "highly relevant" and "really at the heart of the dispute"). Yet PDL refuses to conduct a proper search for materials responsive to these RFPs, limiting what it will search for and where.

---

[4] "PDL Business" does not include its pre-spinoff biotechnology business. It is defined as "the antibody humanization patent royalty business of PDL." Ex. 3 at § 1.46.

PDL first attempts to limit its search to "documents relating to the scope and validity of the Queen patents" and carve out documents related to infringement. This is improper. If PDL's litigation files contain documents related to either PDL's or a third party's ***humanization process***, the documents are relevant to the scope of PDL Technical Information "rightly held" by PDL. Further, documents related to infringement are also likely to be relevant because an infringement analysis inherently requires parties to take positions on claim scope, including how a person of skill would interpret claims or disclosures.

PDL next categorically refuses to search certain files, including correspondence with opposing parties and/or counsel. These documents, by definition, cannot be privileged and to the extent the parties were exchanging substantive correspondence related to disputes surrounding the scope of PDL's inventions or humanization process, that is plainly relevant.

PDL's resort to confidentiality and burden are no basis to refuse to review and produce responsive documents. Third-party confidential information can be handled through the protective order, just like every other document in the case. And Lilly has worked with PDL to reduce burden, agreeing that PDL need not log privileged documents from prior litigations or search folders that consist entirely of such material. PDL cannot now hide behind claims of burden and refuse to properly search its files.

**PDL's Position.** PDL's litigation files consist of documents from prior patent infringement and patent license disputes regarding the Queen Patents. The lawsuits have nothing to do with non-patent technical information. None of them involves humanization agreements or anything similar. PDL has thus limited its search of these files to documents relating to scope and/or validity of the Queen Patents.

Lilly now also seeks documents relating to infringement of the Queen Patents by the defendants in those lawsuits (Alexion, MedImmune, Genentech, and Merck), each of whom is a competitor to Lilly. Such documents are not relevant or proportional to the needs of the case. Lilly's two arguments to the contrary are unavailing. *First*, Lilly speculates that these files may "contain documents related to either PDL's or a third party's humanization process." As PDL has repeatedly stated, the Queen Patents (and not non-patent technical information) were the subject of the litigations in question. *Second*, "infringement requires a two-step analysis." *Eli Lilly and Co. v. Perrigo Co.*, 202 F. Supp. 3d 918, 1012 (S.D. Ind. 2016). "The court first must construe the claims to determine their scope and meaning and then compare the properly construed claims to the allegedly infringing device." *Id.* PDL has already agreed to search for documents relating to the first step. Documents relating to the second step are not relevant and are likely to contain highly confidential information from Lilly competitors that is subject to the protective orders in those cases.

Lilly also demands that PDL search *all* party correspondence in its litigation files. This demand is not proportional to the needs of this case. Litigation correspondence is highly unlikely to have relevant information that is not duplicative of the substantive documents that PDL has agreed to search and (again) often contains highly confidential information from Lilly competitors that is subject to the protective orders in those cases.

3.    **Lilly Dispute #3: Documents relating to PDL's understanding of key contractual provisions (Lilly RFP Nos. 25, 27-28)**

**<u>Lilly's Position</u>.** PDL's understanding of terms like Licensed Product and PDL Technical Information are indisputably relevant to this case. And these requests seek documents related to PDL's understanding of those core contract terms, including PDL's understanding of those terms

in humanization agreements it had with third parties. Thus, these documents are plainly relevant to the case.

There is, as the Court recognized at the last discovery conference, a clear disagreement between the parties about the meaning of these terms. As the Court posed to PDL, "if PDL used the same exact definition on an agreement they signed on Monday, wouldn't that be relevant to their understanding of the term and agreement they signed on Tuesday?" The obvious answer is yes. PDL's understanding of those terms in materially similar humanization agreements is probative of its understanding of those same terms here.

Since the October 11 discovery conference, PDL has started to produce its third-party humanization agreements. Even this preliminary production confirms that PDL's third-party humanization agreements use materially similar terms and materially similar definitions to those at issue in this case (like Licensed Product and PDL Technical Information). PDL should search for and produce documents reflecting its understanding of those terms in its humanization agreements that use them, including PDL's negotiation documents with third parties and internal communications about those terms and agreements.[5]

**PDL's Position.** The Court instructed the parties "to start with plaintiff producing . . . the humanization agreements" and recognized that it "would be fairly burdensome for plaintiff to produce" further information. Dkt. 98 at 29:17-20, 36:1-3. PDL has produced many of its humanization agreements with third parties and is in the process of producing the rest. Yet, instead of using the produced agreements to inform the scope of further discovery, Lilly continues to

---

[5] Contrary to PDL's suggestion, Lilly is not seeking *all* documents relating to all of PDL's humanization agreements. Lilly's request is narrowly tailored to documents related to PDL's understanding of a small set of core contract terms, namely "PDL Technical Information," and "Licensed Product"—or materially similar language and terms—and similarly structured royalty provisions.

demand that PDL produce documents relating to every humanization agreement—all documents concerning the negotiation of the humanization agreements, and all internal communications concerning the humanization agreements.

PDL is willing to conduct a reasonable search for negotiation documents with third parties and non-privileged internal communications relating to the meaning of "Licensed Product" and "PDL Technical Information" by searching the folders where one would expect to find them. But PDL should not be required to broadly search through all company files in the hope of finding any internal mention of a term from another humanization agreement. Not only would such a search not be proportional to the needs of the case, but it would be highly unlikely to yield any document that would illuminate *PDL and Lilly's* shared understanding of the specific humanization agreement in dispute.

Attorneys from Orrick, Herrington & Sutcliffe LLP and Kirkland & Ellis LLP are responsible for resolving these disputes on behalf of PDL and Lilly, respectively.

**IV.    A detailed description of all discovery that is planned to be completed within the 28-day period following the report, including the identity of the counsel responsible for completing such discovery**

As discussed in Section II above, the following discovery will be completed within the 28-day period following this report: (1) AbbVie's response to PDL's third-party subpoena, due November 21, 2024; (2) PDL's response to Lilly's third set of Interrogatories (No. 7), due November 21, 2024; and (3) Lilly's responses to PDL's second set of Requests for Production (Nos. 44-49) and third set of Interrogatories (Nos. 9-14), due November 25, 2024. In addition, the parties agree to exchange deposition notices under Rule 30(b)(6) of the Federal Rules of Civil Procedure on or before November 20, 2024, to allow the parties ample time to resolve any disputes as to the scope of those notices. The parties will respond and object to the Rule 30(b)(6) deposition notices by December 6, 2024. To facilitate deposition scheduling, the parties further agree to

17

exchange a preliminary list of deponents on or before December 13, 2024, and to provide, on or before December 20, 2024, each deponent's availability to appear for deposition in January. By December 13, 2024, the parties will also identify the deponents responsible for the deposition topics identified in the respective Rule 30(b)(6) deposition notices.

Attorneys from Orrick, Herrington & Sutcliffe LLP and Kirkland & Ellis LLP are responsible for completing such discovery on behalf of PDL and Lilly, respectively.

**V.    A description of all known discovery remaining to be completed in this matter, including a proposed timetable for the completion of such discovery and the identity of the counsel responsible for completing such discovery**

As described in Sections I-IV of this report, there are several pending discovery deadlines, including:

| November 20, 2024 | The parties serve 30(b)(6) deposition notices |
|---|---|
| November 21, 2024 | AbbVie's response to PDL's third-party subpoena |
| November 21, 2024 | PDL's response to Lilly's third set of Interrogatories (No. 7) |
| November 25, 2024 | Lilly's response to PDL's second set of Requests for Production (Nos. 44-49) and third set of Interrogatories (Nos. 9-14) |
| December 6, 2024 | The parties will respond and object to the deposition notices |
| December 13, 2024 | The parties exchange a preliminary list of deponents and identify the deponents assigned to each topic |
| December 13, 2024 | AbbVie's response to Lilly's third-party subpoena |
| December 20, 2024 | The parties provide the availability for each identified deponent to sit for deposition |
| December 27, 2024 | The parties substantially complete document production |
| January 27, 2025 | The parties complete non-expert witness discovery and discovery relating to liability issues |
| June 27, 2025 | The parties complete all remaining discovery (i.e., expert witness discovery and discovery relating to damages) |

In addition to the discovery identified above, including the discovery disputes outlined in Section III and the discovery to be completed within the 28-day period following this report outlined in Section IV, the following discovery remains to be completed in this matter:

- any additional fact discovery requests served before the relevant discovery deadline,[6]

- substantial and actual completion of document production,

- fact and corporate witness depositions,

- damages discovery, and

- expert discovery (including depositions).

The parties agree to provide privilege logs and verify their interrogatory responses on or before January 6, 2025. The parties further agree not to dispute the authenticity of any document that they have produced in this matter.

Attorneys from Orrick, Herrington & Sutcliffe LLP and Kirkland & Ellis LLP are responsible for completing all known discovery on behalf of PDL and Lilly, respectively.

**VI.     Any other discovery issues any party believes should be brought to the attention of the Court so as to avoid any delays in the completion of discovery in this matter**

The parties are still awaiting a decision regarding Lilly's Motion to Dismiss (Dkt. 35), which was filed on March 3, 2024, and fully briefed on May 23, 2024. The parties are also awaiting a decision regarding PDL's Motion for Leave to File an Amended Complaint (Dkt. 78), which was filed on September 12, 2024, and fully briefed on October 3, 2024.[7]

---

[6] The relevant deadline to serve Requests for Production is November 22, 2024, and the relevant deadline to serve other discovery requests is December 27, 2024.

[7] As noted in PDL's motion, PDL intends to seek leave to amend its complaint again once Lilly breaches Section 4.09 of the Agreement on November 29, 2024, by failing to pay royalties on donanemab. Dkt. 78 at 4 n.1.

[**<u>PDL's Position</u>**: it would not be appropriate to close liability discovery in this matter before Lilly has answered PDL's complaint. PDL believes it is entitled to seek discovery into any defense that Lilly asserts in this case, but PDL cannot do so until Lilly answers the complaint. PDL further believes that discovery into any defense that Lilly asserts in this case will be required for PDL to prepare its Statement of Claims or Defenses, which is due one week after the close of liability discovery. Dkt. 62 at § IV.] [**<u>Lilly's Position</u>**: Lilly's pending motion to dismiss is not a reason to extend liability discovery in this action. PDL is well appraised of Lilly's positions in this action through ongoing discovery. There is no reason PDL cannot conduct discovery it deems relevant under the current schedule. And the parties agreed to the current schedule knowing that Lilly's motion to dismiss was pending.]

Dated:  November 8, 2024

**WILKINSON, GOELLER, MODESITT, WILKINSON & DRUMMY, LLP**

                                          **BARNES & THORNBURG LLP**

*/s/ Jordan B. Fernandes*

Craig M. McKee (Attorney No. 10245-82)
333 Ohio Street
Terre Haute, Indiana 47807
Tel: +1 812 232 4311
Fax: +1 812 235 5107
Email: cmmckee@wilkinsonlaw.com

OF COUNSEL:

David I. Gindler
Lauren N. Drake
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue
Suite 2700
Los Angeles, CA 90071-1596
Tel: +1 213 629 2020
Fax: +1 213 612 2499
dgindler@orrick.com
ldrake@orrick.com

Thomas C. Chen
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, CA 92614
Tel: +1 949 567 6700
Fax: +1 949 567 6710
tom.chen@orrick.com

Carly Romanowicz
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street
Suite 2000
Boston, MA 02116
Tel: +1 617 880 1800
Fax: +1 617 880 1801
cromanowicz@orrick.com

Jordan B. Fernandes

*/s/ Ryan J. Moorman*

Todd Vare (Attorney No. 18458-49)
JT Larson (Attorney No. 31392-29)
Amanda Gallagher

11 S. Meridian Street
Indianapolis IN 46204
Telephone: (317) 231-7735
todd.vare@btlaw.com
jt.larson@btlaw.com
amanda.gallagher@btlaw.com

OF COUNSEL:

James F. Hurst
James R.P. Hileman
Ryan J. Moorman
Cameron Ginder
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
james.hurst@kirkland.com
james.hileman@kirkland.com
ryan.moorman@kirkland.com

Alina Afinogenova
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 385-7526
alina.afinogenova@kirkland.com

*Attorneys for Defendant*
*Eli Lilly and Company*

Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Tel: +1 212 506 5000
Fax: +1 212 506 5151
jfernandes@orrick.com

Jessica Stern
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, CA 94105-2669
Tel: +1 415 773 5700
Fax: +1 415 773 5759
jstern@orrick.com

*Attorneys for Plaintiff*
*PDL BioPharma, Inc.*