# Exhibit 3

# Separation and Distribution Agreement

between

## PDL BioPharma, Inc.,
a Delaware corporation

and

## Facet Biotech Corporation,
a Delaware corporation

Dated as of December 17, 2008

WEST\21386593.16

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PDL_DONA_0028446

## Table of Contents

Page

Article I Definitions .................................................................................. 1
Article II The Separation ........................................................................ 11
    2.1     General ............................................................................ 11
    2.2     Transfer of Facet Assets and Assumption of Facet Liabilities ................ 11
    2.3     Governmental Approvals; Consents. .............................. 12
    2.4     Deferred Transfers/Assumptions. ................................... 13
    2.5     Calculation, Adjustment and Payment of Selected Liabilities................ 14
    2.6     Termination of Agreements ............................................. 14
    2.7     Disclaimer of Representations and Warranties.................. 15
Article III The Distribution. ..................................................................... 15
    3.1     The Distribution. ........................................................... 15
    3.2     Actions in Connection with the Distribution. .................. 16
    3.3     Conditions to Distribution. ............................................. 17
    3.4     Fractional Shares. .......................................................... 18
Article IV Insurance................................................................................. 18
    4.1     Policies and Rights Included Within the Facet Assets........ 18
    4.2     Post-Effective Time Claims. ........................................... 19
    4.3     PDL Policies ................................................................. 19
Article V Releases And Indemnification .................................................. 20
    5.1     Release of Pre-Distribution Claims. ................................ 20
    5.2     Indemnification by Facet ................................................ 21
    5.3     Indemnification by PDL ................................................. 22
    5.4     Reduction for Insurance Proceeds and Other Recoveries......... 22
    5.5     Procedures For Indemnification of Third-Party Claims. ........... 23
    5.6     Additional Matters. ........................................................ 24
    5.7     Survival of Indemnities.................................................. 25
Article VI Certain Covenants And Other Agreements Of The Parties............ 25
    6.1     Restriction on Employee Solicitation and Hiring ..................... 25
    6.2     Legal Names .................................................................. 25
    6.3     Preparation of Opening Facet Balance Sheet..................... 26
    6.4     Amendment of Patent Licensing Master Agreements .............. 26
    6.5     Payment of Accrued Merit Bonuses ................................ 26
Article VII Confidentiality........................................................................ 27
    7.1     Confidentiality. .............................................................. 27
    7.2     Protective Arrangements.................................................. 27
Article VIII Access To Information And Services ....................................... 28
    8.1     Provision of Books and Records....................................... 28
    8.2     Access to Information ..................................................... 28
    8.3     Production of Witnesses .................................................. 29
    8.4     Privileged Matters .......................................................... 29
Article IX Dispute Resolution .................................................................. 30
    9.1     Disputes and Negotiation................................................. 30
    9.2     Dispute Resolution and Arbitration ................................. 31

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PDL_DONA_0028447

Article X Further Assurances..............................................................................................32
   10.1    Further Assurances...............................................................................................32
Article XI Termination ........................................................................................................32
   11.1    Termination...........................................................................................................32
Article XII Miscellaneous ...................................................................................................33
   12.1    Governing Law; Jurisdiction................................................................................33
   12.2    Assignability ........................................................................................................33
   12.3    Third Party Beneficiaries .....................................................................................33
   12.4    Notices .................................................................................................................33
   12.5    Severability ..........................................................................................................34
   12.6    Expenses ..............................................................................................................34
   12.7    Survival of Covenants..........................................................................................34
   12.8    Waivers of Default ...............................................................................................35
   12.9    Specific Performance...........................................................................................35
   12.10   Amendments ........................................................................................................35
   12.11   Schedules .............................................................................................................35
   12.12   Construction.........................................................................................................35
   12.13   Counterparts.........................................................................................................36

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PDL_DONA_0028448

## Separation and Distribution Agreement

This Separation and Distribution Agreement (this "Agreement"), dated as of December 17, 2008, is entered into by and between PDL BioPharma, Inc., a Delaware corporation ("PDL"), and Facet Biotech Corporation, a Delaware corporation ("Facet") (each a "Party" and collectively, the "Parties"). Capitalized terms used herein and not otherwise defined shall have the respective meanings assigned to them in Article I.

### Recitals

WHEREAS, the Board of Directors of PDL has determined that it is appropriate, desirable and in the best interests of PDL and its stockholders to separate its two businesses, the PDL Business and the Facet Business, into PDL and Facet respectively, two publicly traded companies, by means of the transfer/assumption of certain assets and liabilities from PDL to Facet, all as more fully described in this Agreement and the Ancillary Agreements (the "Separation");

WHEREAS, in order to effect the Separation, the Board of Directors of PDL has further determined that it is appropriate, desirable and in the best interests of PDL and its stockholders to distribute to holders of shares of PDL Common Stock, on a pro rata basis, all of the issued and outstanding shares of common stock, par value $0.01 per share, of Facet, all as more fully described in this Agreement and the Ancillary Agreements (such shares, the "Facet Common Stock", and such distribution, the "Distribution"); and

WHEREAS, the Parties intend in this Agreement to set forth the principal corporate arrangements between the Parties with respect to the Separation and the Distribution.

NOW, THEREFORE, in consideration of the foregoing and the terms, conditions, covenants and provisions of this Agreement, PDL and Facet mutually covenant and agree as follows:

### Article I

### Definitions

1.1    "Action" shall mean any demand, action, cause of action, suit, countersuit, arbitration, inquiry, proceeding or investigation by or before any federal, state, local, foreign or international Governmental entity or any arbitration or mediation tribunal.

1.2    "Affiliate" of a Person shall mean any firm, individual, corporation, business trust, joint venture, association, company, limited liability company, partnership, or other organization or entity, that directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control (provided that such common control is not by a natural person) with such specified Person. As used herein, "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or other interests, by contract or otherwise; provided that if control is

WEST\21386593.16

    PDL_DONA_0028449

deemed solely on the basis of ownership of voting securities or other interests, such ownership must be in excess of twenty percent (20%) of the then-outstanding shares of common stock or the combined voting power of such Person. For the sake of clarity, neither Facet nor any of its subsidiaries shall be considered Affiliates of PDL and its subsidiaries under this Agreement and vice versa.

     1.3    "Agent" shall have the meaning set forth in Section 3.1(a).

     1.4    "Ancillary Agreements" shall mean all of the contracts, obligations, indentures, agreements, leases, purchase orders, commitments, permits, licenses, notes, bonds, mortgages, arrangements or undertakings (whether written or oral and whether express or implied) that are legally binding on either Party or any part of its property under applicable Law entered into in connection with the transactions contemplated hereby, including the documents listed on Attachment 1.4, to be delivered by Facet and PDL in connection with the Separation.

     1.5    "Clinical Trial" shall mean a pre-clinical or clinical trial related to the Products.

     1.6    "Clinical Trial Materials" shall mean the Products and the placebo for each of these Products for use in Clinical Trials, whether in bulk, formulated or finished form and whether in existence at the Effective Time.

     1.7    "Clinical Trial Study Reports" shall mean all reports or summaries of all data, records and documents resulting from the Clinical Trials.

     1.8    "Combined Books and Records" shall have the meaning set forth in Section 8.1(b).

     1.9    "Consents" shall mean any and all consents, waivers or approvals from, or notification requirements to, any Third Parties, including those set forth on Attachment 1.9.

     1.10    "Contract" shall mean any contract, obligation, indenture, agreement, lease, purchase order, commitment, permit, license, note, bond, mortgage, arrangement or undertaking (whether written or oral and whether express or implied) that is legally binding on any Person or any part of its property under applicable Law, but excluding this Agreement and any Ancillary Agreement save as otherwise expressly provided in this Agreement or any Ancillary Agreement.

     1.11    "Convertible Debt" shall mean the (i) 2.75% Convertible Subordinated Notes due 2023 issued by PDL, and (ii) 2.00% Convertible Senior Notes due February 15, 2012 issued by PDL.

     1.12    "Distribution" shall have the meaning set forth in the recitals hereto.

     1.13    "Distribution Date" shall mean the date on which the Distribution to the stockholders of PDL is effective, which is December 18, 2008.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY     PDL_DONA_0028450

1.14    "Effective Time" shall mean 11:59 p.m. Eastern Standard Time on the day immediately preceding the Distribution Date.

1.15    "Environmental Laws" shall mean any environmental laws, rules and regulations of any jurisdiction.

1.16    "Environmental Liabilities" shall mean any Liabilities relating to Environmental Laws.

1.17    "Exchange" shall mean the NASDAQ Global Market.

1.18    "Exchange Act" shall mean the Securities Exchange Act of 1934, as amended, and the rules and regulations of the SEC thereunder, all as the same shall be in effect at the time that reference is made thereto.

1.19    "Excluded Assets" shall mean all assets solely relating to the PDL Business, including the Excluded Intellectual Property and the Queen Royalties, and any and all Contracts of PDL other than the Assumed Contracts and the Leases, and all of PDL's rights, title and interest in and to any and all other assets that are expressly contemplated to be retained by PDL by this Agreement or any Ancillary Agreement (or the Attachments and Schedules hereto or thereto).

1.20    "Excluded Intellectual Property" shall mean (a) the Trademarks listed in Attachment 1.20(a); (b) the patents and patent applications listed in Attachment 1.20(b), and any patents of addition, re-examinations, reissues, extensions, granted supplementary protection certifications, substitutions, confirmations, registrations, revalidations, revisions, additions and the like, of or to said patents and any and all divisionals, continuations and continuations-in-part, and any patents issuing therefrom, as well as any patent applications related thereto (together, the "Queen et al. Patents"); (c) all U.S. and foreign copyrights and copyrightable subject matter solely related to the PDL Business (but excluding the Facet Copyrights), whether registered or unregistered, published or unpublished, statutory or common law, and all Actions against past, present, and future infringement, misappropriation, or other violation of the foregoing; and (d) all other Intellectual Property solely related to the PDL Business.

1.21    "Excluded Liabilities" shall mean (a) any and all Liabilities of PDL and its Affiliates, relating solely to the PDL Business or arising out of or relating to the Excluded Assets, (b) any and all Liabilities of PDL and its Affiliates relating to, arising out of or resulting from PDL's performance or obligations under any Ancillary Agreement or this Agreement and (c) the Convertible Debt.

1.22    "Facet Assets" shall mean:

(a)    All categories of assets that are reflected as assets of Facet in the unaudited pro forma condensed combined balance sheet of Facet, dated September 30, 2008, included in the Form 10, with the value of such asset as reflected in the Opening Facet Balance Sheet.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PDL_DONA_0028451

(b)      All of PDL's rights, title and interest in and to the patents and patent applications listed in Attachment 1.22(b), and any patents of addition, re-examinations, reissues, extensions, granted supplementary protection certifications, substitutions, confirmations, registrations, revalidations, revisions, additions and the like, of or to said patents and any and all divisionals, continuations and continuations-in-part, and any patents issuing therefrom, as well as any patent applications related thereto and all Actions against past, present, and future infringement, misappropriation, or other violation of the foregoing.

(c)      All of PDL's rights, title and interest in and to the Trademarks listed on Attachment 1.22(c), together with (i) all common law rights to such Trademarks, (ii) the goodwill of the Facet Business symbolized by such Trademarks, (iii) all Actions for, or arising from any infringement, dilution, unfair competition, or other violation, including past infringement, dilution, unfair competition, or other violation, of such Trademarks, and (iii) all rights corresponding thereto throughout the world.

(d)      All of PDL's rights, title and interest in and to the domain names listed in Attachment 1.22(d) and all Actions against past, present, and future infringement, misappropriation, or other violation of the foregoing.

(e)      All U.S. and foreign copyrights and copyrightable subject matter related to the Facet Business, whether registered or unregistered, published or unpublished, statutory or common law, including all related registrations, applications and common law rights, in any labels, product marketing materials or other copyrighted works related to the Facet Business and all Actions against past, present, and future infringement, misappropriation, or other violation of the foregoing ("Facet Copyrights").

(f)      All of PDL's rights, title and interest in and to all Intellectual Property, including trade secrets, not hereto forth described in the definition of Facet Assets that are reasonably likely to be used in the Facet Business, but excluding the Excluded Intellectual Property.

(g)      With respect to the Products, all (i) regulatory filings and approvals, registrations and governmental authorizations, (ii) each NDA, (iii) each IND or equivalent, (iv) all compliance notices, licenses and permits, (v) all applications to the FDA or the comparable foreign law or bodies in effect or pending at the Effective Time, and (vi) all materials and Information relating to the FDA and other Governmental Approvals for the Facet Business, all as set forth on Attachment 1.22(g), and all information contained therein (collectively, the "Registrations").

(h)      All Facet Books and Records. "Facet Books and Records" shall mean books and records which relate to Facet, the Facet Assets, the Facet Liabilities or the conduct of the Facet Business.

(i)      All pre-clinical and clinical data related to the Facet Business and which is contained in PDL's databases or otherwise in PDL's possession or control.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    PDL_DONA_0028452

(j)     All fixed assets of PDL as of the Effective Time except for the PDL Fixed Assets.

(k)     All rights and benefits of PDL in existence as of the Effective Time or arising after the Effective Time under the Contracts listed in Attachment 1.22(k) (the "Assumed Contracts"), including any rights to Intellectual Property or Facet Copyrights contained therein.  The Assumed Contracts shall be deemed to include all purchase, work and change orders related thereto.

(l)     All of PDL's rights, title and interest in and to the Clinical Trial Materials.

(m)     All of PDL's rights, title and interest in and to the Clinical Trial Study Reports.

(n)     Cash and cash equivalents in the amount of Four Hundred Five Million U.S. Dollars ($405,000,000) in the aggregate plus the amount of the Post-Closing Cash, as determined in accordance with Section 2.5.

(o)     All of PDL's rights under the Leases, including the right to possess, use and occupy the Premises and the Subleased Premises (as defined in the Leases), and all of PDL's rights, title and interest in and to the Lessee Improvements and the Sublessee Improvements (as those terms are defined in the Leases) constructed at 1400 and 1500 Seaport Boulevard.

(p)     Any and all interest in the Facet Subsidiaries, including Thirty Seven Thousand (37,000) shares in PDL BioPharma France S.A.S. (One Euro per share), One Thousand (1000) shares in Fremont Management, Inc. (par value $.01 per share) and all of the membership interests in Fremont Holdings, LLC.

(q)     Any and all interest in Ophthotech Corporation, including 1,835,000 shares of Series A-1 Preferred Stock ($0.001 par value per share).

(r)     Facet Policies.

(s)     All of PDL's rights, title and interest in and to any and all other assets that are expressly contemplated by this Agreement or any Ancillary Agreement (or the Attachments and Schedules hereto or thereto) to be transferred to Facet.

For the avoidance of doubt and notwithstanding anything to the contrary herein, Facet Assets shall not include (i) any cash or cash equivalents other than as described in clause (n) above, (ii) any net operating losses, net operating loss carry-forwards or other Tax attributes of PDL, whether or not relating to Facet or the Facet Business, or (ii) the Excluded Assets.

1.23     "Facet Business" shall mean the business of PDL related to the research, development, commercialization and optimization of human therapeutics and

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                              PDL_DONA_0028453

technologies related thereto, including the Products, as conducted or proposed to be conducted by PDL prior to or as of the Effective Time.

1.24    "Facet Employees" shall mean all employees listed on Attachment 1.24.

1.25    "Facet Liabilities" shall mean:

(a)    All categories of Liabilities that are reflected as liabilities of Facet in the unaudited pro forma condensed combined balance sheet of Facet, dated September 30, 2008, included in the Form 10 with the value of such liabilities as reflected in the Opening Facet Balance Sheet.

(b)    All Liabilities under the Assumed Contracts.

(c)    All Liabilities under the Leases.

(d)    All Liabilities under the Registrations arising after the Effective Time.

(e)    All other Liabilities (other than Excluded Liabilities) arising out of the conduct of PDL's business prior to the Effective Time, other than liabilities solely related to the PDL Business, including Liabilities arising out of the conduct of the Facet Business or arising out of or related to the Facet Assets.

(f)    Any and all Environmental Liabilities.

(g)    Any and all Liabilities expressly set forth on Attachment 1.25(g).

(h)    The Selected Liabilities, as described in Section 2.5.

(i)    Any and all other Liabilities of Facet relating to, arising out of or resulting from Facet's performance or obligations under any Ancillary Agreement or this Agreement.

(j)    any and all other Liabilities that are expressly contemplated by this Agreement or any Ancillary Agreement (or the Attachments and Schedules hereto or thereto) to be transferred to and assumed by Facet.

For the avoidance of doubt, Facet Liabilities shall not include the Excluded Liabilities.

1.26    "Facet Policies" shall mean all Policies, current or past, which are owned or maintained by or on behalf of PDL or its Subsidiaries, which relate solely to the Facet Business and are assignable to Facet, as listed on Attachment 1.26.

1.27    "Facet Subsidiaries" shall mean PDL BioPharma France S.A.S., Fremont Management, Inc. and Fremont Holdings, LLC.

1.28    "Form 10" shall mean the registration statement on Form 10 filed by Facet with the SEC relating to the Facet Common Stock, as amended from time to time.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                PDL_DONA_0028454

1.29    "Former Facet Employee" shall mean, as of the Effective Time, any individual who, before the Effective Time, terminated employment with PDL or its predecessors and whose principal services to PDL were related to the Facet Business.

1.30    "Former PDL Employee" shall mean, as of the Effective Time, any individual who, before the Effective Time, terminated employment with PDL or its predecessors and is not listed on Attachment 1.24 to this Agreement, other than any Former Facet Employee.

1.31    "Governmental Approvals" shall mean any notices, reports or other filings to be made, or any consents, registrations, approvals, permits or authorizations to be obtained from, any Governmental Entity.

1.32    "Governmental Entity" shall mean any federal, state, local, foreign or international court, government department, commission, board, bureau, agency, official or other regulatory, administrative or governmental entity.

1.33    "IND" shall mean an investigational new drug application, including any amendments and supplements thereto, and all reports, correspondence and other submissions related thereto.

1.34    "Indemnifying Party" shall have the meaning set forth in Section 5.4(a).

1.35    "Indemnitee" shall have the meaning set forth in Section 5.4(a).

1.36    "Indemnity Payment" shall have the meaning set forth in Section 5.4(a).

1.37    "Information" shall mean information, whether or not patentable or copyrightable, in written, oral, electronic or other tangible or intangible forms, stored in any medium, including studies, reports, records, books, contracts, instruments, surveys, discoveries, ideas, concepts, know-how, techniques, designs, specifications, drawings, blueprints, diagrams, models, prototypes, samples, flow charts, data, computer data, disks, diskettes, tapes, computer programs or other software, marketing plans, customer names, communications by or to attorneys (including attorney-client privileged communications), memos and other materials prepared by attorneys or under their direction (including attorney work product), communications and materials otherwise related to or made or prepared in connection with or in preparation for any legal proceeding, and other technical, financial, employee or business information or data.

1.38    "Insurance Proceeds" shall mean those monies (a) received by an insured from an unaffiliated Third Party insurer under any PDL Pre-Distribution Policy, or (b) paid by such Third Party insurer on behalf of an insured under any PDL Pre-Distribution Policy, in either case net of any applicable premium adjustment, retrospectively-rated premium, deductible, retention, or cost of reserve paid or held by or for the benefit of such insured.

1.39    "Intellectual Property" shall mean all intellectual property and industrial property rights of any kind or nature, including all United States and foreign (a) patents,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    PDL_DONA_0028455

patent applications, patent disclosures, and all related continuations, continuations-in-part, divisionals, reissues, re-examinations, substitutions and extensions thereof, (b) Trademarks and all goodwill associated therewith, (c) rights of publicity, (d) moral rights and rights of attribution and integrity, (g) rights in Software, (h) trade secrets and all other confidential and proprietary information, know-how, inventions, improvements, processes, formulae, models and methodologies, (i) rights to domain names, (j) rights to personal information, (k) telephone numbers and internet protocol addresses, (l) applications and registrations for the foregoing, and (m) Actions against past, present, and future infringement, misappropriation, or other violation of the foregoing.

1.40    "Law" shall mean any United States or non-United States federal, national, supranational, state, provincial, local or similar statute, law, ordinance, regulation, rule, code, order, requirement or rule of law (including common law).

1.41    "Leases" shall mean (a) that certain Sublease, effective July 6, 2006, between Openwave Systems Inc. and PDL, (b) that certain Triple Net Lease, effective July 6, 2006, between Pacific Shores Investors, LLC and PDL (regarding 1400 Seaport Boulevard) and (c) that certain Triple Net Lease, effective July 6, 2006, between the Pacific Shores Investors, LLC and PDL (regarding 1500 Seaport Boulevard).

1.42    "Liabilities" shall mean any and all debts, liabilities, and obligations, whether accrued or fixed, known or unknown, absolute or contingent, matured or unmatured, reserved or unreserved, or determined or determinable of any kind or nature whatsoever, including those arising under any Law or Action, whether asserted or unasserted, or order, writ, judgment, injunction, decree, stipulation, determination or award entered by or with any Governmental entity, and those arising under any Contract or any fines, damages or equitable relief which may be imposed in connection with any of the foregoing and including all costs and expenses related thereto.

1.43    "NDA" shall mean a new drug application, including any amendments or supplements thereto, and all reports, correspondence and other submissions related thereto.

1.44    "Opening Facet Balance Sheet" shall mean the combined balance sheet of Facet, dated as of the Distribution Date, prepared on the same basis as the unaudited pro forma condensed combined balance sheet, dated September 30, 2008, included in the Form 10.

1.45    "Party" shall have the meaning set forth in the preamble hereof.

1.46    "PDL Business" shall mean the antibody humanization patent royalty business of PDL, other than the Facet Business, as conducted or proposed to be conducted by PDL prior to or as of the Effective Time. For the avoidance of doubt, the PDL Business includes the operation of the antibody humanization royalty assets business, including the Queen Royalties, Queen et al. Patents, and other assets, Contracts and Liabilities related thereto.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                        PDL_DONA_0028456

1.47    "PDL Common Stock" shall mean the Common Stock, $0.01 par value per share, of PDL.

1.48    "PDL Consolidated Balance Sheet" shall have the meaning set forth in Section 2.5(a).

1.49    "PDL Employee" shall mean an active employee or an employee on vacation or on approved leave of absence (including maternity, paternity, family, sick leave, salary continuation, qualified military service under the Uniformed Services Employment and Reemployment Rights Act of 1994, and leave under the Family Medical Leave Act and other approved leaves) who, on the Distribution Date, is employed or will be employed by PDL.

1.50    "PDL Fixed Assets" shall mean the fixed assets listed on Attachment 1.50 and such other fixed assets of Facet with an aggregate value of no more than $100,000 that the parties may determine within four (4) months after the Effective Time are reasonably required by PDL for the PDL Business.

1.51    "PDL General Liability Policies" shall mean all PDL Pre-Distribution Policies that respond to claims on an occurrence basis.

1.52    "PDL Policies" shall mean all PDL Pre-Distribution Policies that respond to claims on a claims-made basis.

1.53    "PDL Pre-Distribution Policies" shall mean all Policies, other than the Facet Policies and including the PDL General Liability Policies and the PDL Policies, entered prior to or as of the Effective Time, which are between or among PDL and one or more Third Parties, that benefit either or both the PDL Business and the Facet Business.

1.54    "Person" shall mean any natural person, firm, individual, corporation, business trust, joint venture, association, company, limited liability company, partnership, or other organization or entity, whether incorporated or unincorporated, or any governmental entity.

1.55    "Policies" shall mean insurance policies and insurance Contracts of any kind (other than life and benefits policies or Contracts), including primary, excess and umbrella policies, comprehensive general liability policies, director and officer liability, fiduciary liability, automobile, aircraft, property and casualty, business interruption, workers' compensation and employee dishonesty insurance policies, bonds and self-insurance and captive insurance company arrangements, together with the rights, benefits and privileges thereunder.

1.56    "Post-Closing Cash" shall have the meaning set forth in Section 2.5(d).

1.57    "Products" shall mean, individually and collectively, the human therapeutics (a) under development, regardless of the state of development, by PDL, including daclizumab, elotuzumab (HuLuc63), PDL192, volociximab (M200),

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    PDL_DONA_0028457

visilizumab (Nuvion), fontilizumab (HuZAF), PDL41 and PDL252 and (b) outlicensed by PDL to a Third Party, including Liv-1, PR-1, IL-12 (fully human) and HuM195.

1.58    "Queen Royalties" shall mean any and all receivables or cash received pursuant to Contracts, other than any Assumed Contract, pursuant to which PDL licensed to a Third Party rights to practice the Queen et al. Patents. For the sake of clarity, the Parties agree that: (i) certain of the Assumed Contracts that involve collaborative development of Products provide for a license to Third Parties of rights to practice the Queen et al. Patents; (ii) no receivable or cash received under any such Assumed Contract shall be deemed a Queen Royalty and (iii) to the extent that a license to the Queen et al. Patents may be necessary for such development, Facet and PDL have entered or shall enter into separate agreements covering any royalty payments.

1.59    "Record Date" shall mean the close of business on the date to be determined by the PDL Board of Directors as the record date for the Distribution.

1.60    "SEC" shall mean the United States Securities and Exchange Commission or any successor agency thereto.

1.61    "Security Interest" shall mean any mortgage, security interest, pledge, lien, charge, claim, option, right to acquire, voting or other restriction, right-of-way, covenant, condition, easement, encroachment, restriction on transfer, or other encumbrance of any nature whatsoever, excluding restrictions on transfer under security Laws.

1.62    "Selected Liabilities" shall have the meaning set forth in Section 2.5(b).

1.63    "Selected Liabilities Statement" shall have the meaning set forth in Section 2.5(d).

1.64    "Separation" shall have the meaning set forth in the recitals hereto.

1.65    "Software" shall mean all computer programs (whether in source code, object code, or other form), algorithms, databases, compilations and data, and technology supporting the foregoing, and all documentation, including flowcharts and other logic and design diagrams, technical, functional and other specifications, and user manuals and training materials related to any of the foregoing.

1.66    "Subsidiary" of a Person shall mean any firm, individual, corporation, business trust, joint venture, association, company, limited liability company, partnership, or other organization or entity, whether incorporated or unincorporated of which at least a majority of the securities or interests having by the terms thereof ordinary voting power to elect at least a majority of the board of directors or others performing similar functions with respect to such corporation or other organization, that is directly or indirectly owned or controlled by such Person or by any one or more of its Subsidiaries, or by such Person and one or more of its Subsidiaries; provided, however, that no Person that is not directly or indirectly wholly owned by any other Person shall be a Subsidiary of such other Person unless such other Person controls, or has the right, power or ability to control, that

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PDL_DONA_0028458

Person. For the sake of clarity, Facet shall not be considered a Subsidiary of PDL under this Agreement.

1.67    "Third Party" shall mean any Person other than PDL, any PDL Affiliate, Facet and any Facet Affiliate.

1.68    "Third-Party Claim" shall have the meaning set forth in Section 5.5(a).

1.69    "Trademarks" shall mean all trademarks, service marks, trade names, names, slogans, taglines, logos, design marks, trade dress, product designs, and product packaging, including all applications for and registrations of the foregoing, and including those at common law.

1.70    "Transfer" shall have the meaning set forth in Section 2.2(a).

## Article II

### The Separation

2.1    General. Subject to the terms and conditions of this Agreement, the Parties shall use, and shall cause any respective Subsidiaries to use, their respective reasonable best efforts to consummate the transactions contemplated hereby.

2.2    Transfer of Facet Assets and Assumption of Facet Liabilities. Subject to Sections 2.3, 2.4 and 2.5:

(a)    At the Effective Time, PDL shall, and hereby does, transfer, contribute, assign, and convey, or cause to be transferred, contributed, assigned, and conveyed, to Facet all of PDL's right, title and interest in and to the Facet Assets (the "Transfer").

(b)    At the Effective Time, Facet shall, and hereby does, accept the Transfer from PDL.

(c)    On or before the Distribution Date, PDL shall transfer the Facet Employees to Facet.

(d)    Except as otherwise specifically set forth in this Agreement or any Ancillary Agreement, at the Effective Time Facet shall, and hereby does, accept, assume or, as applicable, retain all the Facet Liabilities and shall after the Effective Time perform, discharge and fulfill, in accordance with their respective terms, all the Facet Liabilities, in each case, unless specified otherwise in the definition of Facet Liabilities, regardless of (i) when or where such Liabilities arose or arise, (ii) where or against whom such Liabilities are asserted or determined, (iii) which entity is named in any action associated with any Liability, and (iv) whether the facts on which they are based occurred prior to, on or after the Effective Time (the "Assumption"). Notwithstanding the foregoing, Facet shall not assume any Liability attributable to the failure of PDL or its

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PDL_DONA_0028459

under lawful process or from any Governmental entity to disclose or provide Information of the other Party or their respective Subsidiaries that is subject to the confidentiality provisions hereof, such Party shall notify the other Party prior to disclosing or providing such Information and shall cooperate at the expense of the requesting party (and to the extent legally permissible) in seeking any reasonable protective arrangements requested by such other Party. Subject to the foregoing, the Party that received such request may thereafter (i) furnish only that portion of the Confidential Information that is legally required, (ii) give notice to the other Party of the Information to be disclosed as far in advance as is practical, and (iii) exercise reasonable best efforts to obtain reliable assurance that the confidential nature of such Information shall be maintained.

## Article VIII

## Access To Information And Services

8.1    Provision of Books and Records.

(a)    Except as otherwise provided in any Ancillary Agreement, as soon as practicable after the Distribution Date, PDL and Facet shall cooperate to provide that originals of Facet Books and Records (including all documents and electronically stored information except e-mails or other electronic correspondence not readily available in hard copy) which solely relate to Facet or the conduct of the Facet Business, as the case may be, up to the Effective Time, are in the possession or control of Facet or a Facet Subsidiary.

(b)    With respect to Facet Books and Records (including e-mails and other electronic correspondence not readily available in hard copy) that relate to both the Facet Business and the PDL Business (the "Combined Books and Records"), (i) the Parties shall use good faith efforts to divide as soon as practicable but no later than six (6) months following the Distribution Date such Combined Books and Records into the books and records which solely relate to PDL or the conduct of the PDL Business and those that relate solely to Facet and the Facet Business, as the case may be, up to the Effective Time, as appropriate, and (ii) to the extent such Combined Books and Records are not so divided, each Party shall keep and maintain copies of such Combined Books and Records as reasonably appropriate under the circumstances, subject to applicable confidentiality provisions hereof and of any Ancillary Agreement.

8.2    Access to Information.  Except as otherwise provided in any Ancillary Agreement, after the Distribution Date, each Party shall provide the other Party and such other Party's authorized accountants, counsel and other designated representatives reasonable access and duplicating rights during normal business hours to all records, books, contracts, instruments, computer data and other data and Information relating to pre-Distribution operations of the Facet Business or PDL Business, as applicable, or within such Party's possession or control or such other Information reasonably necessary for the preparation, review or auditing for spin-out financials for such other Party (including using reasonable best efforts to give access to Persons or firms possessing Information) insofar as such access is reasonably required by such other Party for the

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                PDL_DONA_0028476

conduct of the Facet Business or PDL Business, as applicable, subject to appropriate restrictions for classified or privileged information.

8.3    Production of Witnesses. At all times after the Effective Time, each of Facet and PDL shall use reasonable best efforts to make available to the other, upon prior written request, its and its Subsidiaries' officers, directors, employees and agents as witnesses to the extent that such Persons may reasonably be required in connection with any Action.

8.4    Privileged Matters. To allocate the interests of each Party with respect to privileged information, the Parties agree as follows:

(a)    PDL shall be entitled, in perpetuity, to control the assertion or waiver of all privileges in connection with privileged information which relates solely to the PDL Business, whether or not the privileged information is in the possession of or under the control of PDL or Facet. PDL shall also be entitled, in perpetuity, to control the assertion or waiver of all privileges in connection with privileged information that relates solely to the subject matter of any claims constituting Liabilities of PDL and its Affiliates and all Persons who at any time prior to or as of the Effective Time were directors, officers, agents or employees of PDL or any of its Affiliates (in each case, in their respective capacities as such), in each case, together with their respective heirs, executors, administrators, successors and assigns, now pending or which may be asserted in the future, in any lawsuits or other Actions initiated against or by PDL, whether or not the privileged information is in the possession of or under the control of PDL or Facet.

(b)    Facet shall be entitled, in perpetuity, to control the assertion or waiver of all privileges in connection with privileged information which relates solely to the Facet Business, whether or not the privileged information is in the possession of or under the control of PDL or Facet. Facet shall also be entitled, in perpetuity, to control the assertion or waiver of all privileges in connection with privileged information which relates solely to the subject matter of any claims constituting Facet Liabilities, now pending or which may be asserted in the future, in any lawsuits or other Actions initiated against or by Facet, whether or not the privileged information is in the possession of Facet or under the control of PDL or Facet.

(c)    PDL and Facet agree that they shall have a shared privilege, with equal right to assert or waive, subject to the restrictions of this Section 8.4, with respect to all privileges not allocated pursuant to the terms of Sections 8.4(a) and (b). All privileges relating to any claims, proceedings, litigation, disputes or other matters which involve both PDL and Facet in respect of which PDL and Facet retain any responsibility or liability under this Agreement shall be subject to a shared privilege.

(d)    No Party may waive any privilege which could be asserted under any applicable law, if the other Party has a shared privilege, without the consent of the other Party, except to the extent reasonably required in connection with any litigation with Third Parties or as provided in Section 8.4(e). Such consent shall be in writing, or

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PDL_DONA_0028477

IN WITNESS WHEREOF, the Parties have caused this Separation and Distribution Agreement to be executed by their duly authorized representatives as of the day and year first above written.

**PDL BioPharma, Inc.,**
a Delaware corporation

By:
Name: John P. McLaughlin
Title: Senior Advisor

By:
Name: Andrew Guggenhime
Title: Senior Vice President and Chief Financial Officer

**Facet Biotech Corporation,**
a Delaware corporation

By:
Name: Faheem Hasnain
Title: President and Chief Executive Officer

**SEPARATION AND DISTRIBUTION AGREEMENT**
**SIGNATURE PAGE**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PDL_DONA_0028485

**Attachment 1.4**
<u>Ancillary Agreements</u>

(a)     <u>Deliveries by PDL</u>:



        viii.     a counterpart of the Transition Services Agreement, substantially in the form attached hereto as <u>Exhibit H</u>, duly executed by PDL;



WEST\21614837.1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



iv.

WEST\21614837.1

PDL_DONA_0028488

ix. 

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PDL_DONA_0028489