UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |
|---|---|
| PDL BioPharma, Inc.,<br><br>                       Plaintiff,<br><br>      v.<br><br>Eli Lilly and Company,<br><br>                       Defendant. | Civil Action No. 1:23-cv-02289-RLY-MKK |

**JOINT REPORT ON THE STATUS OF DISCOVERY**

The Court ordered the parties to submit this Supplemental Joint Report on the Status of Discovery. Dkt. 92. Plaintiff PDL BioPharma, Inc. ("PDL") and Defendant Eli Lilly and Company ("Lilly") respond as follows:

## I.    A detailed description of all discovery completed within the preceding 28 days

PDL corrected its response to Lilly Interrogatory No. 1, responded to Lilly's fifth set of Interrogatories (Nos. 12-19), and responded to Lilly's first set of Requests for Admission (Nos. 1-17). Lilly supplemented its response to PDL Interrogatory No. 3; responded to PDL's fifth set of Interrogatories (No. 17), sixth set of Interrogatories (Nos. 18-19), and first set of Requests for Admission (Nos. 1-25); and amended its Initial Disclosures.

In addition, the parties have served their 30(b)(6) deposition notices and responses thereto. The parties continue to meet and confer regarding 30(b)(6) depositions. The parties have also exchanged a preliminary list of deponents and their availability to sit for deposition.

PDL has produced eight additional volumes of documents, amounting to 20,252 documents. Documents produced include re-productions of PDL-produced documents from *PDL BioPharma, Inc. v. Alexion Pharms., Inc.*, No. 07-156-JJF (D. Del.) and *MedImmune, LLC v. PDL BioPharma, Inc.,* No. 08-05590-JF (N.D. Cal.), re-productions from various third parties from PDL's litigation with MedImmune, LLC, other litigation files from PDL's prior litigations, such as invalidity contentions and briefings, documents that hit on the parties' agreed upon search string for PDL humanization license agreement negotiation correspondence, royalty reports or statements regarding PDL's humanized antibodies. In total, PDL's production now consists of 25 volumes, amounting to 30,606 documents (at least 167,000 pages). Lilly has not produced any additional volumes of documents. In total, Lilly's production consists of six volumes, amounting to 2,149 documents (26,085 pages).

II.     **A detailed description of all discovery presently scheduled or pending, including the due dates for any pending discovery requests and the scheduled dates for any depositions, and the identity of the counsel responsible for completing such discovery**

Lilly answered PDL's Second Amended Complaint on January 27, 2025. PDL served a Request for Production and Interrogatory relating to the affirmative defense raised in Lilly's answer on January 30, 2025. Lilly has agreed to respond to Interrogatory No. 20 and Request for Production No. 76, and its responses are due on March 3, 2025. In addition, Lilly's response to PDL's Amended Interrogatory No. 13 is due on February 10, 2025.

The parties have agreed to rolling productions and to substantially complete document production by February 26, 2025. Dkt. 39-1 at ¶ 7. PDL has largely completed its review of ESI maintained by Weil, Gotshal & Manges LLP, counsel to PDL in litigations with Alexion Pharmaceuticals, Inc. and MedImmune, LLC over ten years ago. Many documents from these prior litigations are marked confidential or attorneys' eyes only pursuant to the protective orders in those litigations, and thus implicate confidentiality obligations to numerous third parties. PDL has requested consent from the relevant third party to produce responsive documents. PDL is working with the Lilly and third parties to reach agreement regarding the treatment of third-party confidential information to the extent it is not relevant to the claims and defenses in this case. PDL is still in the process of collecting hardcopy files in the possession of PDL's prior litigation counsel at Weil, Gotshal & Manges LLP.

Lilly is continuing to review ESI that hits on the parties' agreed-upon search terms and parameters. Lilly's collection of documents includes the previously identified seven custodians, Ronald DeMattos, Christopher LeMasters, Michael A. Johnson, Dr. Jirong Lu, Dr. Ying Tang, Peter McDonnell, Gregory Beuerlein, and James Posada, as well as documents from non-custodial

sources, like network folders. Lilly intends to continue making rolling productions and will meet the parties' agreed substantial-completion deadline.

The parties have scheduled the following depositions:

| Witness Name | Date |
|---|---|
| Paul Hinton | February 21, 2025 |
| Naoya Tsurushita | February 25, 2025 |
| Chris LeMasters | February 26, 2025 |
| Dennis Gately | February 27, 2025 |
| Peter McDonnell | March 4, 2025 |
| Maximiliano Vasquez | March 7, 2025 |
| Jirong Lu | March 7, 2025 |
| Harold Selick | March 12, 2025 |
| Ronald DeMattos | March 12, 2025 |
| Man Sung Co | March 14, 2025 |
| Sergio Garcia | March 21, 2025 |
| Michael Andrew Johnson | March 25, 2025 |
| Ying Tang | March 27, 2025 |
| Chris Stone | March 28, 2025 |

The Court granted the parties' Joint Motion to Amend the Revised Case Management Plan. Dkt. 146. The Court has ordered that non-expert witness discovery and discovery relating to liability issues be completed by March 28, 2025, and that all remaining discovery (i.e., expert witness discovery and discovery relating to damages) be completed by August 26, 2025. Dkt. 146.

Attorneys from Orrick, Herrington & Sutcliffe LLP and Kirkland & Ellis LLP are responsible for responding to pending discovery requests and for scheduling depositions on behalf of PDL and Lilly, respectively.

**III.    A detailed description of any discovery disputes presently pending, including the status of the resolution of the dispute and the identity of the counsel responsible for resolving the dispute**

The parties continue to negotiate the scope of certain discovery requests, specifically:

**PDL's Disputes**

1. **Information regarding Lilly's contentions in this case (ROGs 6-7, 9-10, 14)**

PDL timely objected to the Court's order on PDL Interrogatories 6-7, 9-10, and 14 on January 23, 2025. Dkt. 147. Lilly will file a response to PDL's objections in accordance with Fed. R. Civ. P. 72.

2. **Information regarding selection of donanemab human framework regions and donanemab heavy chain substitutions (ROGs 3, 19 and Topic 5)**

Interrogatory No. 3 asks Lilly to "[d]escribe in detail all facts and circumstances concerning Lilly's humanization of donanemab, including explanation of why and how Lilly selected the human framework regions for donanemab, explanation of why and how Lilly performed each substitution in donanemab's light chain variable region, and identification of the dates humanization occurred and all involved individuals." PDL asked Lilly to supplement its response to include information about: (1) why and how Lilly selected the human framework regions for donanemab and (2) why and how Lilly performed each substitution in donanemab's heavy chain variable region. Lilly supplemented its response to explain why and how it selected the human framework regions for donanemab. Lilly "provided its response on [why and how it performed each substitution in donanemab's heavy chain variable region] in response to PDL's Interrogatory No. 19," which asks Lilly to "explain in detail why Lilly did not use the residue from

VH1-69" "[f]or each Kabat framework position in donanemab's heavy chain variable region that is different than the human VH1-69, including at Kabat positions 27, 28, and 30." In response to Interrogatory No. 19, Lilly stated, in relevant part, that "no mutations were made to the framework residues of the heavy chain" and that the residues PDL identified were in the CDRs, which were taken from the mouse antibody mE8 and "transferr[ed] into the human germline frameworks." PDL contends that Lilly did not explain why it did not use the residue from VH1-69 at Kabat positions 27, 28, and 30.

Relatedly, 30(b)(6) Topic 5 seeks testimony concerning "Substitutions in donanemab's variable regions, including why and how Lilly performed each substitution in donanemab's light chain variable region and heavy chain variable region." In response, Lilly has stated it will designate a witness to testify about "Lilly's humanization of donanemab, including the Y36 substitution in donanemab's light chain variable region." Lilly has offered to make a witness available to testify about specific substitutions in donanemab's heavy chain variable region, if any, that PDL identifies. The parties continue to meet and confer regarding this issue.

3. **Information regarding any comparison of donanemab to a PDL-Humanized Antibody in the context of Lilly's humanization of donanemab (ROG 4)**

Interrogatory No. 4 asks Lilly to "[d]escribe in detail all testing of PDL-Humanized Antibodies, including any comparisons of donanemab to PDL-Humanized Antibodies." On October 23, 2024, PDL requested that Lilly supplement its response, as Lilly had previously offered, to describe "any comparisons of donanemab's humanization process (including tests) and the overlap between any PDL Humanized Antibody and donanemab." Lilly complied and on November 15, 2024, supplemented its response in relevant part as follows: "Lilly is not aware of any non-privileged comparisons of the process used to humanize donanemab to any humanization process utilized by PDL. Lilly is likewise not aware of any non-privileged comparisons of the

6

donanemab sequence to any variable region(s) of a PDL Humanized Antibody." On November 20, 2024, PDL requested that Lilly supplement its response to identify any comparisons of donanemab to PDL-Humanized Antibodies in the context of donanemab's humanization. Lilly has not agreed to supplement its response with this information. PDL respectfully requests that the Court order briefing and hold a discovery conference on this issue.

### 4. Information regarding specific testing of donanemab (ROG 8)

Interrogatory No. 8 asks Lilly to "[d]escribe in detail any testing to characterize the binding affinity, binding specificity, and/or binding epitope of Donanemab and any testing relating to the humanization and structure of Donanemab, such as testing relating to the cloning, sequencing, sequence alignments, homology testing, molecular modeling, crystal structure, site-directed mutagenesis, purification, or expression of Donanemab." Lilly responded that "pursuant to Fed. R. Civ. P. 33(d), Lilly has and/or will produce non-privileged documents sufficient to show the binding affinity, specificity, epitope, and sequence of donanemab, as they relate to the humanization of donanemab, to the extent such documents exist." Lilly has not identified any documents pursuant to Rule 33(d) but has committed to doing so by February 13, to the extent such documents exist. The parties continue to meet and confer regarding this issue.

### 5. Custodians and search terms

PDL has requested that Lilly use search term 2 ("@pdl" from 01/01/2000 to 12/31/2002) to search for and produce additional communications between PDL and non-custodial individuals at Lilly likely to possess responsive documents, including Stuart Bright and Nigel Jenkins. Lilly has not agreed to do so. PDL respectfully requests that the Court order briefing and hold a discovery conference on this issue.

### 6. Information regarding the humanization reports (ROG 17)

Interrogatory No. 17 asks Lilly to "[i]dentify the Humanization Reports, or other reports concerning PDL's generation of humanized antibodies Hu3D6, Hu266, and/or Hu10D5, that you received from PDL, including the dates on which they were received, and all Lilly employees who reviewed them." In response, Lilly stated: "Based on Lilly's investigation to date, Lilly has not identified any report that Lilly received from PDL in Lilly's files." PDL has asked Lilly to describe its "investigation to date," by, for example, identifying the individuals whose ESI Lilly searched for any such report. Lilly confirmed that it searched (1) all documents that hit on the parties' agreed search terms and custodians; (2) emails from individuals outside the parties' agreed custodian list; (3) non-custodial ESI; and (4) hardcopy documents. Lilly has not agreed to supplement its response with the additional information PDL has requested. The parties continue to meet and confer regarding this issue.

### 7. Information regarding PDL's rights under the Agreement (RFPs 57-59 and Topics 24, 26)

Request for Production No. 57 seeks "All Documents and Communications concerning Your offer to buy or divest PDL's rights under the Agreement or any part thereof." Lilly objects to RFP No. 57 because any alleged offers to buy or divest PDL's rights under the Agreement are not relevant to the claims and defenses in this action and thus Lilly has not agreed to search for or produce any documents in response to this request. Request for Production No. 58 seeks "All Communications with any third party, including any Lilly investor, creditor, debtor, bank, underwriter, or potential acquiror, about PDL's rights under the Agreement or any part thereof." In response, Lilly stated that it "is not aware of any non-privileged communications with any third party regarding PDL's claimed rights to donanemab under the Agreement." Request for Production No. 59 seeks "All Documents and Communications concerning any valuation of PDL's rights

under the Agreement or any part thereof." In response, Lilly agreed to "produce non-privileged documents sufficient to show Lilly's financial obligations to PDL for solanezumab."

Similarly, 30(b)(6) Topic 24 seeks testimony concerning "Lilly's offer to buy or divest PDL's rights under the Agreement or any part thereof," and 30(b)(6) Topic 26 seeks testimony concerning "Communications with third parties, including investors, related to the Agreement or this litigation." Lilly maintains that Topic 24 is not relevant to the claims and defenses in this case and has not agreed to designate a witness on these topics. Lilly has offered to produce a witness on Topic 26 if PDL "Defines with reasonable particularity the specific communications PDL wants Lilly to prepare a witness to testify about," if any. PDL respectfully requests that the Court order briefing and hold a discovery conference on this issue.

## 8. Information regarding Lilly's Third-Party Agreements (RFPs 64, 69-75)

These requests seek "All licenses and/or agreements concerning any humanized antibody or the humanization of a non-human antibody between You and any other party that includes language providing for 'independent development' or independently-developed products, and all Documents and Communications concerning that language" (RFP 64); "The Research Collaboration and License Agreement between Eli Lilly and Company and Avidity Biosciences, Inc., dated April 17, 2019, and all related Documents and Communications concerning the "Independent Development" language used therein in Section 8.1.3(b)" (RFP 69); "The Research and Collaboration Agreement between Verve Therapeutics, Inc. and Eli Lilly and Company, dated June 14, 2023, and all related Documents and Communications concerning the 'Independent Development' language used therein in Section 11.6" (RFP 70); "The Amended and Restated Research and Collaboration Agreement by and among ProQR Therapeutics N.V. and ProQR Therapeutics VIII B.V. and Eli Lilly and Company dated December 21, 2022, and all related

Documents and Communications concerning the 'Independent Development' language used therein in Section 9.4" (RFP 71); "The Collaboration Agreement between Eli Lilly and Company and Foghorn Therapeutics Inc. dated December 10, 2021, and all related Documents and Communications concerning the 'Independent Development' language used therein in Section 10.4" (RFP 72); "The Research and Collaboration Agreement by and among Eli Lilly and Company and ProQR Therapeutics N.V. and ProQR Therapeutics VIII B.V., dated September 3, 2021, and all related Documents and Communications concerning the "Independent Development" language used therein in Section 9.4" (RFP 73); "The Collaboration and License Agreement between Eli Lilly and Company and Merus N.V., dated January 18, 2021, and all related Documents and Communications concerning the 'Independent Development' language used therein in Section 9.1.5" (RFP 74); and "The Clinical Trial Collaboration and Supply Agreement by and between Athenex, Inc. (also known as Kinex Pharmaceuticals, Inc.) and Eli Lilly and Company, dated October 24, 2016, and all related Documents and Communications concerning the 'independent development' language used therein in Section 9.2" (RFP 75). Lilly has objected to RFPs 64 because Lilly's humanization agreements, if any, with third parties covering different technology are not relevant. Lilly has objected to RFPs 69-75 as irrelevant because the agreements are "not related to antibody humanization" and because the phrase "Independent Development" is not a term used in the Agreement and thus the use of the phrase in any other agreement is not relevant to any claim or defense in this case. Lilly has not agreed to search for or produce any documents in response to these requests. PDL respectfully requests that the Court order briefing and hold a discovery conference on this issue.

9. **Topics relating to "humanization" of donanemab (Topics 1-7, 16)**

In response to 30(b)(6) Topics 1-7 and 16, Lilly has agreed to designate a witness to testify regarding Lilly's "humanization" of donanemab. PDL has sought confirmation that the parties share a common understanding of the term "humanization." Specifically, in correspondence, dated November 20, 2024, PDL wrote:

> To be clear, humanization refers to the process by which a non-human antibody is modified for use in the human body. This includes both the grafting of non-human CDRs to human framework regions, as well as subsequent amino acid substitutions and back-mutations. In the case of donanemab, its humanization process began with mE8 and concluded with variant B12L. With reference to LLY-PPDL-00000104, humanization includes the (1) "Humaniz[a]tion & Affinity Maturation," (2) Drugability Optimization," and (3) "CI" steps depicted in Figure 1. Please confirm that Lilly shares a common understanding as to the term "humanization."

On January 29, 2025, PDL offered to accept Lilly's responses to Topics 1-7 and 16 if Lilly agreed to this definition of humanization. Lilly has confirmed that it received PDL's proposal and will respond in writing. The parties continue to meet and confer regarding this issue.

10. **Topics relating to Lilly's position that donanemab is not a Licensed Product and does not incorporate PDL Technical Information (Topics 27-28)**

30(b)(6) Topics 27 and 28 seek testimony concerning "The complete basis for Lilly's allegation that donanemab is not a Licensed Product under the Agreement" and "The complete basis for Lilly's allegation that donanemab does not incorporate PDL Technical Information," respectively. Lilly has agreed to designate a witness to testify about "Lilly's humanization of donanemab." PDL respectfully requests that the Court order briefing and hold a discovery conference on this issue.

11. **Topics relating to communications between PDL and Lilly (Topics 17-18)**

PDL seeks testimony concerning "Lilly's Communications with and any technical information disclosed to Lilly by PDL, including the existence and identity of any Communication between Lilly and Cary L. Queen, Harold Selick, Man Sung Co, William Schneider, Philip Payne,

Nicholas Landolfi, James Duncan, Nevenka Avdalovic, Marguerite Deschamps, Kathleen Coelingh, Naoya Tsurushita, Maximiliano Vasquez, Raymond Ogawa, Audrey Jia, Deepal Bhatt, Paul Hinton, Yin Zhang, Kanokwan Pakabunto, Jon Yang, Doug Ebersole, or Robert Kirkman" (30(b)(6) Topic 17) and "Lilly's Communications with PDL concerning: PDL Technical Information, Licensed Product(s), the parties' Agreement and Amendment (as defined in PDL's complaint), antibodies humanized by PDL under the 2000 Agreement, or technical information relating to the development of humanized antibodies, regardless of the antibody in the context of which the information is provided" (30(b)(6) Topic 18). These topics are commensurate with the scope of documents that Lilly agreed to produce in response to RFPs 19-21 and 33. In response, Lilly objected to Topics 17 and 18 as improper Rule 30(b)(6) topics because they would require Lilly to prepare a witness to testify about "the existence and identity of any Communication" that allegedly occurred between any Lilly employee and more than 20 identified PDL employees, without regard to when such communications occurred or what topics were discussed. Lilly contends that these topics are not proper subjects of deposition testimony, but instead are document requests repurposed as 30(b)(6) topics. Lilly has stated that it "is willing to consider a narrowed [Topic 17/18] that defines with reasonable particularity the specific communications PDL wants Lilly to prepare a witness to testify about." The parties continue to meet and confer regarding this issue.

## 12. Topics relating to donanemab and the Agreement or PDL (Topic 23)

Topic 23 seeks testimony concerning "Non-privileged Documents or Communications about donanemab and the Agreement or PDL." In response, Lilly objected as overbroad and an improper Rule 30(b)(6) topic and has stated that it will designate a witness to testify about "Lilly's

understanding of its rights and obligations under the Agreement with respect to donanemab." The parties continue to meet and confer regarding this issue.

**Lilly's Disputes**

1. **PDL's description of its "humanization process" (ROG 8).**

Interrogatory No. 8 asks PDL to "Describe in detail 'PDL's humanization process,' as that phrase is used in paragraph 29 of PDL's complaint, including each step of the process." PDL responded that "PDL's Amended and Restated Response to Interrogatory No. 3 sets forth how donanemab incorporates 'PDL Technical Information' because it was humanized using PDL's humanization process," explaining how "PDL's humanization process differs ... from Reichmann 1988," and identifying additional documents pursuant to Rule 33(d). Lilly contends that PDL's response does not describe its humanization process, as that phrase is used in PDL's complaint, and that PDL's reliance on documents under Rule 33(d) is improper because Lilly cannot determine from those documents what PDL contends is its humanization process. PDL supplemented its response to Interrogatory No. 8 on January 30. Lilly respectfully requests that the Court order briefing and hold a discovery conference on this issue.

2. **PDL's identification of antibodies containing PDL Technical Information (ROG 7).**

Interrogatory No. 7 asks PDL to "Identify all humanized antibodies that PDL contends incorporates any" PDL technical information. PDL has supplemented its response to identify "the humanized immunoglobulins prepared, analyzed and tested by PDL" but has not identified all antibodies PDL contends contain PDL technical information. PDL disagrees that the parties are at an impasse with respect to Interrogatory No. 7. The parties continue to meet and confer regarding this issue.

**3. PDL's objections about its ability to prepare a witness on certain deposition topics.**

PDL's responses and objections to Lilly's 30(b)(6) notice topics include caveats, including that topics "seek[] information that was the province of individuals no longer affiliated with the company" and "seek scientific and/or technical information that was the province of former employees having the relevant scientific and/or technical background who are no longer affiliated with the company." PDL further states that it "is a company with only a few remaining employees who are non-scientists, and thus will be limited in their ability to provide testimony concerning the scientific and/or technical aspects of each Topic beyond what is written on documents and provided in PDL's interrogatory responses." And for each topic for which PDL agrees to prepare a witness, it includes the express limitation that PDL will prepare a witness "to the extent that PDL has any reasonably available knowledge related to this Topic."

Lilly has asked PDL to identify the specific topics for which it has no knowledge and cannot prepare a witness, as Lilly did in its responses to PDL's Rule 30(b)(6) notice. *See, e.g.*, Lilly Response to PDL Rule 30(b)(6) Topics 10-12 (stating that Lilly is aware of no responsive information). PDL is not aware of any topic for which it has agreed to present a witness "for which it has no knowledge and cannot prepare a witness." Lilly respectfully requests that the Court order briefing and hold a discovery conference on this issue.

**4. PDL's responses and objections to Lilly's Rule 30(b)(6) Notice Topic No. 7.**

PDL responded to Lilly's Rule 30(b)(6) notice on December 6. PDL has not agreed to produce a witness in response to Topics 7. Topic 7 covers "The inventions, discoveries, know-how, trade secrets, information, experience, technical data, formulas, procedures, results, or materials that PDL contends are rightfully held by PDL." PDL contends that Topic No. 7 is overbroad and better addressed through agreed-upon Topic 8 ("The inventions, discoveries, know-how, trade secrets, information, experience, technical data, formulas, procedures, results, or

materials that PDL contends are PDL Technical Information under the License Agreement") and through contention interrogatories. Lilly contends that Topic 7 is a proper subject for a 30(b)(6) deposition and that Lilly is entitled to PDL's testimony about what the technical information that PDL contends is "rightfully held by PDL." Lilly respectfully requests that the Court order briefing and hold a discovery conference on this issue.

**5.  PDL's responses and objections to Topics 15.**

Topic 15 covers "PDL's method of selecting human frameworks, as referenced in PDL's response to Interrogatory No. 3, including how PDL's method compares to any other method for selecting a human framework that was in the public domain as of the date of the License Agreement."  PDL has agreed to produce a witness to testify "generally about PDL's method of selecting human frameworks" but not about "how PDL's method compares to any other method for selecting a human framework that was in the public domain."  PDL contends that this testimony is more appropriately dealt with through expert discovery.  Lilly contends that PDL's understanding of its process compared to other processes in the public domain is relevant to PDL's contention that its claimed method of selecting framework regions is PDL Technical Information. Lilly respectfully requests that the Court order briefing and hold a discovery conference on this issue.

**6.  PDL's responses and objections to testifying with regards to the Facet Spinoff (Topic 24).**

Topic 24 covers "PDL's decision to spin off its biotechnology business into Facet Biotech Corp." PDL maintains this information is irrelevant and has not agreed to prepare a witness to

testify on Topic No. 24. Lilly respectfully requests that the Court order briefing and hold a discovery conference on this issue.

Attorneys from Orrick, Herrington & Sutcliffe LLP and Kirkland & Ellis LLP are responsible for resolving these disputes on behalf of PDL and Lilly, respectively.

**IV.    A detailed description of all discovery that is planned to be completed within the 28-day period following the report, including the identity of the counsel responsible for completing such discovery**

PDL and Lilly served third-party document subpoenas on AbbVie. AbbVie has responded to the parties' subpoenas. PDL and Lilly have met and conferred with AbbVie about AbbVie's responses and objections to the parties' subpoenas. AbbVie has identified a universe of responsive lab notebooks and proposed that—subject to various conditions—it make those lab notebooks available for review by the parties' outside counsel, so that the parties can identify the pages that reflect the work that PDL did for Lilly under the Agreement. AbbVie has further proposed that it will review and produce the lab notebooks identified by the parties' outside counsel. AbbVie has requested that the parties pay AbbVie's legal fees and costs for the review of those documents. Lilly does not believe the lab notebooks will lead to relevant information and will, therefore, not share the cost of AbbVie's review with PDL. PDL is considering whether to review the lab notebooks subject to AbbVie's conditions. Attorneys from Orrick, Herrington & Sutcliffe LLP and Taft Stettinius & Hollister LLP are responsible for completing such discovery on behalf of PDL and Lilly, respectively.

The depositions of Paul Hinton, Naoya Tsurushita, Chris LeMasters, and Dennis Gately are scheduled to occur within the next 28 days. Attorneys from Orrick, Herrington & Sutcliffe LLP and Kirkland & Ellis LLP are responsible for completing such discovery on behalf of PDL and Lilly, respectively.

**V.**    **A description of all known discovery remaining to be completed in this matter, including a proposed timetable for the completion of such discovery and the identity of the counsel responsible for completing such discovery**

As described in Sections I-IV of this report, there are several pending discovery deadlines, including:

| February 10, 2025 | Lilly's response to PDL's Amended Interrogatory No. 13 |
|---|---|
| February 26, 2025 | The parties substantially complete document production |
| March 28, 2025 | The parties complete non-expert witness discovery and discovery relating to liability issues |
| August 26, 2025 | The parties complete all remaining discovery (i.e., expert witness discovery and discovery relating to damages) |

In addition to the discovery identified above, including the discovery disputes outlined in Section III and the discovery to be completed within the 28-day period following this report outlined in Section IV, the following discovery remains to be completed in this matter:

- substantial and actual completion of document production,[1]

- fact and corporate witness depositions,

- damages discovery, and

- expert discovery (including depositions).

The parties agreed to provide privilege logs and verify their interrogatory responses on or before March 6, 2025. The parties further agreed not to dispute the authenticity of any document that they have produced in this matter.

Attorneys from Orrick, Herrington & Sutcliffe LLP and Kirkland & Ellis LLP are responsible for completing all known discovery on behalf of PDL and Lilly, respectively.

---

[1] The parties have agreed to substantially complete document production 30 days prior to the close of non-expert witness discovery and discovery relating to liability issues.

**VI.**     **Any other discovery issues any party believes should be brought to the attention of the Court so as to avoid any delays in the completion of discovery in this matter**

Lilly answered PDL's Second Amended Complaint on January 27, 2025. PDL served a Request for Production and Interrogatory relating to the affirmative defense raised in Lilly's answer on January 30, 2025. Lilly has agreed to respond to Interrogatory No. 20 and Request for Production No. 76, and its responses are due on March 3, 2025.

Dated:  January 31, 2025

<table>
<tr>
<td>

**WILKINSON, GOELLER, MODESITT, WILKINSON & DRUMMY, LLP**


*/s/ Jordan B. Fernandes*
Craig M. McKee (Attorney No. 10245-82)
333 Ohio Street
Terre Haute, Indiana 47807
Tel: +1 812 232 4311
Fax: +1 812 235 5107
Email: cmmckee@wilkinsonlaw.com


OF COUNSEL:

David I. Gindler
Lauren N. Drake
Y. John Lu
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue
Suite 2700
Los Angeles, CA 90071-1596
Tel: +1 213 629 2020
Fax: +1 213 612 2499
dgindler@orrick.com
ldrake@orrick.com
jlu@orrick.com


Thomas C. Chen
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, CA 92614
Tel: +1 949 567 6700
Fax: +1 949 567 6710
tom.chen@orrick.com


Carly Romanowicz
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street
Suite 2000
Boston, MA 02116
Tel: +1 617 880 1800
Fax: +1 617 880 1801
cromanowicz@orrick.com

</td>
<td>

**BARNES & THORNBURG LLP**


*/s/ Ryan J. Moorman*
Todd Vare (Attorney No. 18458-49)
JT Larson (Attorney No. 31392-29)
Amanda Gallagher
11 S. Meridian Street
Indianapolis IN 46204
Telephone: (317) 231-7735
todd.vare@btlaw.com
jt.larson@btlaw.com
amanda.gallagher@btlaw.com


OF COUNSEL:

James F. Hurst
James R.P. Hileman
Ryan J. Moorman
Cameron Ginder
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
james.hurst@kirkland.com
james.hileman@kirkland.com
ryan.moorman@kirkland.com
cameron.ginder@kirkland.com


Alina Afinogenova
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 385-7526
alina.afinogenova@kirkland.com


*Attorneys for Defendant*
*Eli Lilly and Company*

</td>
</tr>
</table>

Jordan B. Fernandes
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Tel: +1 212 506 5000
Fax: +1 212 506 5151
jfernandes@orrick.com

Jessica Stern
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Tel: +1 415 773 5700
Fax: +1 415 773 5759
jstern@orrick.com

*Attorneys for Plaintiff*
*PDL BioPharma, Inc.*